IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GEORGE CHRISTOPHER WASHINGTON, | ) ) | Civil Action No. 7:12-cv-00437 |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION |
| SYKES, et al., | ) ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Plaintiff George Christopher Washington, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendants in this matter violated his constitutional rights. Sgt. Sykes and correctional officers Messer, Powers, and Mullins filed a motion for summary judgment, and Nurse Delleray Powers ("Nurse Powers") filed a motion to dismiss.[1] Washington has responded to the defendants' motions, making this matter ripe for disposition. For the following reasons, I will grant Sgt. Sykes and officers Messer, Powers and Mullins's motion for summary judgment, and I will grant Nurse Powers's motion to dismiss.

## I. BACKGROUND

Washington alleges that he was assaulted by Sgt. Sykes and correctional officers Messer, Powers, and Mullins on April 28, 2012, in violation of the Eighth Amendment's prohibition against the use of excessive force. Washington also claims that he was denied due process at his institutional hearing, where he was convicted of simple assault stemming from that April 28th incident. Lastly, Washington asserts that, following the April 28th incident, Nurse Powers denied him medical care, also in violation of the Eight Amendment. All of the pertinent events

---

[1] Defendants Sykes, Messer, and Powers were named in Washington's original complaint. However, he was granted leave to file a second amended complaint, which named officer Mullins and Nurse Powers as additional defendants.

in this case took place at Red Onion State Prison ("Red Onion"), where Washington is incarcerated and the defendants work as Red Onion employees.

The parties present different versions as to what took place between Washington, Sgt. Sykes, and the correctional officers during the alleged assault on April 28, 2012. However, it appears undisputed that the incident occurred while Washington's handcuffs were being taken off through the tray slot in his cell. Washington claims that the defendants placed him in his cell, closed the cell door, and ordered him to put his hands through the tray slot so that they could remove his handcuffs. Washington alleges that after his left handcuff was removed, Sykes "started pulling and grabbing on [his] right arm with the handcuffs still on" while using racially-charged profanity. Pl's Am. Compl. at 9 (Docket No. 26). Washington claims that Messer, Powers and Mullins joined in and "started to attack and use excessive force on [his] right hand [while] making all type[s] of race statements toward him." *Id*. Thereafter, Washington alleges that Mullins "grabbed her can of OC gas [and] opened it up on [Washington]," hitting him in his face and eyes. *Id.* Washington alleges that the alleged assault injured his right arm, hand, shoulder, and wrist. *Id.* at 4. Washington also claims that he lost feeling in his right thumb and the tips of his fingers, and suffered nerve damage to the right side of his neck. *Id.*

Two days later, on April 30, 2012, Washington was served with the charge of simple assault upon a non-offender. Aff. of Misty Counts ¶ 5 (Docket No. 40-2). An ensuing investigation found that Washington had assaulted Messer during that April 28th incident. On May, 9, 2012, Washington was found guilty of the disciplinary offense of simple assault, and he was placed in isolation for 30 days as a penalty. Counts Aff. ¶ 8.

On May 10, 2012, Washington filed an emergency grievance regarding the April 28th incident. *See* Aff. of R. Mullins at ¶¶ 9 (Docket No. 40-1). After he was advised that his complaint did not meet the definition of emergency, Washington filed an informal complaint on May 13th. A subsequent investigation determined that there was no evidence to substantiate Washington's claim that he was the one who was assaulted during the April 28th incident. *Id.* at ¶ 11.

Along with his Eight Amendment claim of excessive force, Washington asserts that he was denied due process at his May 9, 2012 institutional hearing, because the hearing officer denied his request for inmate D.A. Rivera to submit a witness statement regarding the incident. Washington also claims that a week following the alleged assault, he asked Nurse Powers for "some medical health care" because he was in pain due to his injuries. Pl's Am. Compl. at 10. Washington states that Nurse Powers denied him treatment, also in violation of the Eighth Amendment.[2]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

---

[2] Washington also states that he asked Nurse Adams for treatment immediately following the incident, which she refused to provide. However, Washington does not name Nurse Adams as a defendant in this suit.

and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A pro se complaint must be liberally construed, and "held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation omitted).

### B. Motion for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

When considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific

facts illustrating genuine issues for trial. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citation omitted). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. However, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). At the summary judgment stage, the nonmoving party must come forward with more than "'mere speculation or the building of one inference upon another'" to resist dismissal of the action. *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)); *see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

A grant of summary judgment is reviewed de novo, drawing reasonable inferences in the light most favorable to the nonmoving party. *Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 421 (4th Cir. 2012). The reviewing court will uphold the district court's grant of summary judgment unless it finds that a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174-75 (4th Cir. 2009).

### III. DISCUSSION

#### A. Washington's Excessive Force Claim against Sgt. Sykes and officers Messer, Powers, and Mullins

Defendants argue that Washington failed to exhaust his administrative remedies regarding his excessive force claim. The Prison Litigation Reform Act ("PLRA") provides that, under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes . . . whether they allege excessive force or some other wrong," and whether the form of relief the inmate seeks is available under the administrative procedure. *Id*. *See also Booth v. Churner*, 532 U.S. 731, 741 (2001) (A prisoner must exhaust administrative remedies "regardless of the relief offered through administrative procedures."); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

To comply with § 1997e(a), an inmate must follow each step of the established administrative procedure that the facility provides to prisoners, and meet all deadlines within that procedure before filing a § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006).[3] The defendants bear the burden of proving that Washington failed to exhaust the available administrative remedies associated with his claims. *See Jones*, 549 U.S. at 212.

Operating Procedure 866.1, Offender Grievance Procedure, sets out the administrative procedure inmates in Virginia Department of Corrections ("VDOC") prisons must follow to

---

[3] The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

resolve grievances. An inmate must first make a good faith effort to informally resolve his grievance about an incident by submitting an informal complaint. If dissatisfied with the response to his informal complaint, the inmate may then file a regular grievance within 30 days of the incident, with the informal complaint and response attached. *See* Mullins Aff. at ¶ 7. An inmate may file an emergency grievance if he believes there is a situation which may subject him to immediate risk of serious personal injury or irreparable harm. However, the filing of an emergency grievance does not satisfy the exhaustion requirement. *Id.* at ¶ 8.

Both Washington and the defendants have submitted copies of the pertinent grievance forms in this case. Those records, along with an affidavit by R. Mullins, the grievance coordinator at Red Onion, show that Washington submitted an informal complaint on May 13, 2012, alleging that he was assaulted by Sgt. Sykes and correctional officers Powers and Messer on April 28, 2012. Washington's informal complaint was answered on May 28, 2012, with the finding that there was no evidence to support his claim of assault. *See* Docket No. 40-1 at 19. On June 4, 2012, Washington attempted to file a regular grievance regarding the alleged assault. However, that grievance was denied because the filing period had expired. *See* Docket No. 40-1 at 20–21. Washington then appealed to the Regional Ombudsman, who upheld the decision. Docket No. 40-1 at 21.[4]

In his reply to the defendants' motion for summary judgment, Washington does not present any facts or arguments indicating that he properly exhausted his administrative remedies

---

[4] OP 866.1 provides three levels of review for regular grievances. The Warden or Superintendent of the facility conducts the Level I review. If the inmate is dissatisfied with the Level I determination, he may appeal the determination to Level II. Level II reviews are conducted by the Regional Director, Health Services Director, or Chief of Operations for Classification and Records. For most issues, Level II is the final level of review. Certain issues are also appealable to Level III, for which the review is conducted by the Deputy Director or Director of the VDOC. Mullins Aff. at ¶10.

regarding his excessive force claim, or that these administrative remedies were unavailable to him. Again, Washington's June 4, 2012 grievance regarding the April 28th incident was denied for intake because the filing period had expired. Thus, based on the record before me, I find that Washington failed to properly exhaust the available administrative remedies for his excessive force claim against defendants Sykes, Powers, Messer and Mullins, and his claim fails as a matter of law, pursuant to 42 U.S.C. § 1997e(a).

### B. Washington's Due Process Claim

Washington also claims that his due process rights were violated, but he does not indicate which of the defendants violated his rights, or clearly specify how his rights were violated. Washington does state that his request for an inmate witness statement (D.A. Rivera) at his May 9, 2012 institutional hearing was denied. Washington attached a copy of his witness request form to his amended complaint, indicating that Rivera saw the incident. Pl.'s Am. Compl. at 24. To the extent that Washington alleges that his conviction and confinement penalty on the charge stemming from the April 28th incident were a violation of his due process rights afforded under the Fourteenth Amendment, his claim fails.

The Constitution affords an inmate procedural protections during an administrative disciplinary hearing only when the loss of statutory good time credits or some other liberty interest is at risk. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). On the other hand, "changes in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate [and] are contemplated by his original sentence to prison—are necessarily functions of prison management that must be left to

the broad discretion of prison administrators to enable them to manage the prisons safely and effectively." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (citations omitted).

I find that Washington's punishment of 30 days in isolation following his May 9, 2012 institutional hearing did not impose an "atypical and significant hardship on [Washington] in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. *See also Perry v. Edmonds*, 2009 WL 2337998, at *3 (W.D. Va. July 28, 2009) ("Plaintiff's classification or [30-day] isolation penalty clearly does not exceed a sentence in such an extreme way as to give rise to the protection of the Due Process Clause by its own force.") (citing *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)). Thus, Washington had no constitutional right to any procedural protections during that hearing.

Even assuming that a protected liberty interest was affected by his conviction, Washington's claim under the Fourteenth Amendment still fails. It is well-established that prison officials have the discretion to refuse witness requests. *See Wolff*, 418 U.S. at 566. The hearing officer, Misty L. Counts, submitted an affidavit indicating that based on the location of Washington's cell, the requested witness would have been unable to see the incident clearly. As a result, Counts determined that his testimony was irrelevant. Counts Aff. ¶ 7. Washington's witness request was properly considered and denied by the hearing officer, and he has not submitted any facts or arguments that specifically address the hearing officer's explanation.[5] Because he has not demonstrated that the witness had any relevant information, Washington fails to show that his due process rights were violated when his request for a specific witness

---

[5] Nor does Washington claim that jail officials failed to give him advance notice of his charges or written findings for their decision. *See generally Wolff*, 418 U.S. at 563–64.

statement was denied. For all of these reasons, I will grant the defendants' motion for summary judgment regarding Washington's due process claim.

### C. Washington's Eight Amendment Claim against Nurse Powers

To state an Eighth Amendment claim that jail personnel were deliberately indifferent to an inmate's medical needs, a plaintiff must allege that a defendant was personally aware of facts indicating a substantial risk of serious harm, recognized the existence of such risk, and acted with deliberate indifference to the plaintiff's serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard.").

In this case, Washington alleges that, a week following the alleged assault, he was "in serious pain and suffering from his injuries" and asked Nurse Powers for "some medical health care treatment," which he claims she denied him. Pl.'s Am. Compl. at 10. However, Washington does not indicate what specific treatment he asked Nurse Powers to provide, or whether he suffered any injury due to the alleged denial of treatment. Washington also submitted an emergency grievance dated May 10, 2012, which indicated that he was having "constant pain" in his right arm due to the April 28th incident. *See* Docket No. 26-1 at 27. The grievance response, issued the same day, advised Washington to file a sick call request. *Id.* However, Washington does not indicate whether he filed a sick call request. Lastly, Washington states in his amended complaint that an x-ray was taken of his right arm approximately a month following the April 28, 2012 incident, which reportedly showed no injuries. Pl.'s Am. Compl. at 11.

In short, Washington's pleadings are devoid of any allegation that Nurse Powers withheld any specific and necessary medical treatment for a serious medical need. *See Estelle*, 429 U.S. at 106. Instead, Washington only vaguely claims that Nurse Powers failed to adequately attend to his medical needs. Even if it is assumed that Washington had a serious medical condition, Washington's pleadings present no factual basis to suggest that Nurse Powers was aware of that need, or acted with deliberate indifference to that need. Accordingly, I will grant Nurse Powers's motion to dismiss.

### IV. CONCLUSION

For the foregoing reasons, Sgt. Sykes and correctional officers Messer, Powers, and Mullins's motion for summary judgment is granted. Nurse Powers's motion to dismiss is also granted.

The Clerk of the Court is directed to send copies of this memorandum opinion and the accompanying final order to the parties.

**ENTER**: This 15th day of July, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE